[Cite as *Garcia v. Newark Builders Supply, Inc.*, 2013-Ohio-4230.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EZEQUIEL CELAYA GARCIA, et al. | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiffs-Appellants | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 13 CA 27 |
| NEWARK BUILDERS SUPPLY, INC.,<br>dba NBS SYSTEMS, et al. | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common Pleas, Case Nos. 2005 CV 01461 and 2005 CV 01460

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      September 25, 2013

APPEARANCES:

For Plaintiff-Appellant Garcia

JAMES MALEK
DOUG MALEK
ED MALEK
1227 South High Street
Columbus, Ohio  43206-3445

For Defendant-Appellee Newark

DAVID A. HERD
JOHN NEMETH
21 East Frankfort Street
Columbus, Ohio  43206-1069

For Defendant-Appellee Jefferson

RICHARD BROWN
10 West Broad Street, Suite 1300
Columbus, Ohio  43215-3419

*Wise, J.*

{¶1} Plaintiff-Appellant Ezequiel Celaya Garcia appeals the judgment of the Licking County Court of Common Pleas granting the motion to dismiss filed by Defendant-Appellee, Newark Builders Supply, Inc.

<u>STATEMENT OF THE CASE AND FACTS</u>

{¶2} The facts, as set forth in the prior appeal in this case, are as follows:

{¶3} The Court first notes the majority of the testimony about the relevant activities that occurred on November 29-30, 2003, comes from Ezequiel Celaya Garcia, the sole survivor of the incident described below.

{¶4} Edgar Noe Romero ("Romero"), Luciana Balderas ("Balderas") and Ezequiel Celaya Garcia ("Garcia") were citizens of Mexico who together came to work in the United States. The three men came to Columbus, Ohio and found jobs in the construction field. Garcia and Romero worked as independent contractors in the roofing industry, while Balderas had performed drywall work.

{¶5} In the evening of Saturday, November 29, 2003, Romero dropped Garcia and Balderas off at the International Ballroom, a drinking establishment. While at the International Ballroom, Garcia and Balderas met Jorge Luis Quintero AKA Jesse Perez ("Perez"). The men began consuming alcohol; Perez and Garcia did some cocaine together. Balderas and Perez discussed their similar work with drywalling.

{¶6} At 2:00 a.m. on Sunday, November 30, 2003, the three men left the International Ballroom. Balderas called Romero from a cell phone and asked Romero to come and give Balderas and Garcia a ride home. Perez asked Romero to give him a ride to his truck parked at a residential construction site located at 186 Applewood

Drive, Pataskala, Licking County, Ohio.  Romero agreed to drive Perez to his truck.  On route to the site, the men stopped at a gas station where Perez purchased a 12-pack of beer.

{¶7}    The property located at 186 Applewood Drive, also known as Lot 24, is the site of a residence being constructed by Jefferson Homes, a building company.  As part of the construction process, Jefferson Homes hired Newark Building Supply, Inc. ("NBS") as an independent contractor to complete the dry walling.  In order to do some of the dry walling, the workers require electricity to use their tools.  Donald J. Wilson, Jr. ("Wilson"), the supervisor for NBS, testified through deposition that a NBS employee dropped off a gasoline-powered generator at 186 Applewood Drive because electricity had not yet been connected to the work site.  Wilson stated that the generator was to be placed in the house so that the generator could not be stolen, but he did not tell the workers exactly where in the house to place the generator.

{¶8}    Wilson testified that NBS hired Perez as a subcontractor to sand the drywall at 186 Applewood Drive.  Wilson assigned the job to Perez on November 28, 2003, and estimated that the sanding work would only take four to five hours to complete.  Wilson stated that Perez told him that he would do the sanding on Saturday, November 29, 2003, and Wilson expected Perez to complete the sanding that afternoon.  Wilson was to inspect the sanding on December 1, 2003.  Wilson further stated that Perez would not require any electricity to complete the sanding aspect of the dry walling.

{¶9}    Romero, Balderas, Garcia, and Perez arrived at 186 Applewood Drive between 3:30 a.m. and 4:00 a.m. on that Sunday morning.  When they arrived at

Perez's truck parked at the site, Perez invited the men into the house to see the work Perez had been doing on the house. Garcia testified that he did not go into the house to perform any work.

{¶10} Perez went to the back of the house and opened the front door for the other three men to come in. Garcia saw that Perez turned on a light in the house and also plugged in a kerosene heater on the main floor. Garcia testified that he heard the sound of a generator, but it sounded far from him.

{¶11} After Perez turned the light on in the house, Romero, Perez and Balderas began talking. Perez picked up a dry walling instrument and tried to polish a wall. Garcia saw Perez hand the tool to Romero and Romero began to use the tool. Perez also gave his phone number to Balderas.

{¶12} Garcia wanted to leave shortly after arriving at the house because he was tired and wanted to sleep. He asked his friends to leave, but they continued talking. At approximately 4:00 a.m., Garcia went to a different part of the house and went to sleep.

{¶13} Around 8:00 a.m. or 9:00 a.m. that same Sunday morning, Marco Bravo ("Bravo") testified during deposition that he arrived at the construction site to complete a dry walling job on Lot 25, the house next door to 186 Applewood Drive. Bravo required electricity to complete his dry walling task, but the house he was working on did not have electricity connected to it nor was there a generator on the premises. Bravo knew there was a generator at 186 Applewood Drive located in the basement. Bravo crawled through a basement window and found the running generator in the basement, chained to a pole. Bravo added more gasoline to the running generator. He unplugged a cord from the generator and plugged his extension cord in. Bravo came up from the

basement to the first floor of 186 Applewood Drive. He saw men sleeping there and heard them loudly snoring.

{¶14} After running the extension cord from 186 Applewood Drive to the house he was working on, Bravo worked with a helper he had hired himself to help him hang drywall. Wilson testified during deposition that it was common practice for the contractors to hire helpers to aid them in finishing a job. The contractor would pay the helper out of his own funds. When Bravo and his helper finished their work later that afternoon, the helper went to 186 Applewood Drive to turn off the generator. The helper told Bravo that when he came into the house, one of the men in the house told him to leave the generator on, so the helper did not turn it off.

{¶15} Sometime on Sunday night, Garcia believed that he woke up and was unable to move his right arm or walk. He crawled to the front door and opened it. The next thing he remembered was being awakened by the ringing of Romero's cell phone. It was Monday morning, December 1, 2003. Garcia crawled to Romero, got the cell phone and answered it. He told the caller that he could not stand up and he couldn't get his friends to answer.

{¶16} Garcia called out for help and a worker outside installing gutters heard his voice. At the same time, Wilson arrived at the site. The worker motioned Wilson into the house. Wilson testified that when he came into the home, he did not immediately see the men; he began walking through the house to look for Perez because Wilson saw his truck parked at the house. He then walked down into the basement because he saw electrical cords running down to the basement. While in the basement, he checked the gas in the generator because the house was very cold. When he came back

upstairs, he saw the men lying in the great room of the home and called 911. Wilson saw empty beer bottles on the floor and disposed of the bottles in a dumpster. While walking through the house, Wilson testified that he saw that none of the sanding had been completed.

{¶17} When the emergency personnel arrived at the home site, Balderas, Romero and Perez were dead from carbon monoxide poisoning. Garcia survived but suffered serious injuries. An investigation determined that the men had perished from carbon monoxide produced by the gasoline-powered generator in the basement.

{¶18} On November 28, 2005, Plaintiffs Maria Hernandez (Administrator of the Estate of Luciana Balderas), Ana Garcia (Administrator of the Estate of Edgar Noe Romero), and Ezequiel Celaya Garcia re-filed two complaints against NBS and Jefferson Builders, Inc.[1] The trial court consolidated the cases for discovery and summary judgment purposes. NBS and Jefferson Builders, Inc. filed motions for summary judgment which the trial court granted in a joint entry on October 9, 2006.

{¶19} On November 6, 2006, Plaintiffs appealed from the decision granting summary judgment in favor of NBS. By Judgment Entry and Opinion filed August 17, 2007, this Court found summary judgment was inappropriate in this matter, reversed the trial court's decision and remanded the matter back to the trial court for further proceedings consistent with this Court's decision.

{¶20} On September 10, 2007, Defendants appealed this Court's decision to the Ohio Supreme Court and the trial court stayed the case.

---

[1] Both cases were initially filed in early 2005, dismissed and re-filed later in the year. (March 7, 2013, Judgment Entry)

**{¶21}** On January 23, 2008, the Supreme refused to hear Defendants' appeal and dismissed the appeal.

**{¶22}** The trial court was never notified of the Supreme Court's decision, the stay was never lifted and the case was never placed back on the trial court's active docket.

**{¶23}** On January 16, 2013, Defendants-Appellees filed a Motion to Dismiss with Prejudice for Failure to Prosecute with the trial court.

**{¶24}** By Order docketed January 17, 2013, the trial court set an oral hearing on Defendants-Appellees' Motion to Dismiss for February 14, 2013.

**{¶25}** On February 1, 2013, Plaintiff-Appellant filed a Motion to Reset the Trial Date and Issue a New Case Schedule.

**{¶26}** On February 11, 2013, Defendants-Appellees filed a Memorandum Contra Plaintiff's Motion to Reset Trial Date.

**{¶27}** On February 14, 2013, Plaintiff-Appellant filed its Reply to Defendants' Motion to Dismiss. Defendants-Appellees also filed a Reply to Plaintiff's Response (entitled "Reply").

**{¶28}** By Judgment Entry filed March 7, 2013, the trial court granted Defendants-Appellees' motion to dismiss, finding that "lack of any contact with the Court or request for status conference or any type of inquiry whatsoever for a period exceeding five years constitutes failure to prosecute for which the sanctions set out in Rule 41 is dismissal".

**{¶29}** Plaintiff-Appellant Ezequiel Celaya Garcia now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

**{¶30}** "I. THE TRIAL COURT ERRONEOUSLY GRANTED DEFENDANT-APPELLEE'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE BECAUSE A DISMISSAL WAS TOO HARSH OF A SANCTION WHEN THE TRIAL COURT ITSELF DID NOT FOLLOW THE MANDATE OF THIS COURT AND INITIATE FURTHER PROCEEDINGS.

**{¶31}** "II. THE TRIAL COURT ERRONEOUSLY GRANTED DEFENDANT-APPELLEE'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE WHEN THE DOCTRINE OF LATCHES DOES NOT APPLY BECAUSE DEFENDANT NEVER INDICATED THAT IT WAS PREJUDICED UNDER THE CIRCUMSTANCES.

**{¶32}** "III. THE TRIAL COURT ERRONEOUSLY GRANTED DEFENDANT-APPELLEE'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE BECAUSE PLAINTIFFS CONDUCT HAS NOT BEEN SO NEGLIGENT, IRRESPONSIBLE, CONTUMACIOUS OR DILATORY AS TO PROVIDE SUBSTANTIAL GROUNDS FOR DISMISSAL WITH PREJUDICE.

**{¶33}** "IV. THE TRIAL COURT ERRONEOUSLY DENIED PLAINTIFF-APPELLANT'S MOTION TO RESET THE TRIAL DATE."

I., II., III.

**{¶34}** As Appellant's first three Assignments of Error challenge the trial court's decision granting Appellees' motion to dismiss, we shall address them together.

**{¶35}** Civil Rule 41 addresses Dismissal of Actions, and states, in relevant part:

**{¶36}** "(B) Involuntary dismissal: effect thereof

**{¶37}** "(1) *Failure to prosecute*. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim."

**{¶38}** The decision to dismiss a case pursuant to Civ.R. 41(B)(1) is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 371, 678 N.E.2d 530.

**{¶39}** An abuse of discretion is more than an error of law of judgment; it implies that the action of the trial court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶40}** Nonetheless, as this Court noted in *Palacios v. Gruen* (Dec. 26, 1989), Knox App. No. 89-CA-29, whenever possible, claims and defenses should be addressed on their merits. *Id.,* citing *Maritime Manufacturers, Inc. v. Hi-Skipper Marina* (1982), 70 Ohio St.2d 257, 436 N.E.2d 1034. Thus, "[t]he extremely harsh sanction of dismissal should be reserved for cases when an attorney's conduct falls substantially below what is reasonable under the circumstances evidencing a complete disregard for the judicial system or the rights of the opposing party." *Id.*, citing *Moore v. Emmanuel Family Training Center, Inc.* (1985), 18 Ohio St.3d 64, 70. The trial court should consider whether or not a party's conduct is "so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice * * *." *Quonset Hut* at 48, 684 N.E.2d 319.

**{¶41}** The trial court, in its March 7, 2013, Judgment Entry, recognized the trial court's responsibility to manage the cases on its docket, and stated:

**{¶42}** "The Court is mindful of its obligations under the Rules of Superintendence to track its cases and set them for trial when they are ready. This case was closed when a final appealable judgment was entered. The case should have been reopened when remanded by the Court of Appeals, and the Court is at a loss to explain why it was not reopened, which would have caused the case to remain on the Court's active calendar, and therefore subject to regular review. Since that time in this Court, computer systems have changed, calendaring schemes have changed and employees and magistrates have changed."

**{¶43}** However, the trial court then went on to find that regardless of such obligation of the court, trial counsel's failure to notify or contact the court for over five years was inexcusable and dismissed the action.

**{¶44}** Upon review, while this Court does not disagree with the trial court's finding that the lack of any action by Appellant's counsel was inexcusable, we find that the trial court's action in granting the motion to dismiss in this matter was an abuse of discretion.

**{¶45}** As stated by the Tenth District Court of Appeals in *Korodi v. Minot* (1993), 89 Ohio App.3d 90, syllabus:

**{¶46}** "Dismissal with prejudice was too harsh a sanction for plaintiff's inaction in failing to make any inquiry of assignment commissioner as to why his case had not been scheduled for trial, notwithstanding that plaintiff sat idly by for more than three and one-half years after case was ready for trial assignment; primary neglect was that of the court itself, which bore primary responsibility for scheduling cases for trial. Common Pleas Superintendence Rule 6(A)."

**{¶47}** In *Korodi*, the Tenth District Court of Appeals held:

**{¶48}** "The trial court erred in finding the primary duty to cause the case to be set for trial to be upon plaintiff. Under the rules, the primary duty is upon the plaintiff to prosecute the case and see that all things are accomplished to make the case ready for trial assignment in a timely fashion. However, once the case is ready for trial assignment under the local rules of the trial court and under the Rules of Superintendence, the primary responsibility is upon the trial court itself to see that the case is scheduled for trial. By local rules, the trial court has placed the burden of keeping track of cases and scheduling for trial those cases which are ready for trial upon its assignment commissioner.

**{¶49}** " ***

**{¶50}** "In other words, even though the primary responsibility for scheduling this case for trial was upon the court, plaintiff must bear some burden of inquiry where there is an undue prolonged delay in the scheduling of a case for trial. Thus, some sanctions can be justified but not the harsh sanction of dismissal with prejudice where the primary neglect was that of the court itself. Since the trial court found dismissal rather than immediate trial appropriate, we find no abuse of discretion to that extent, so long as the dismissal is without prejudice."

**{¶51}** In the case *sub judice*, we find that the sanction of dismissal was too harsh of a sanction as the trial court's dismissal operates as a dismissal with prejudice. Accordingly, we hold it was an abuse of discretion to dismiss Appellant's action with prejudice for failure to prosecute in this matter

**{¶52}** Appellant's First, Second and Third Assignments of Error are sustained.

IV.

**{¶53}** In Appellant's Fourth Assignment of Error he argues that the trial court erred in denying his motion to reset the trial date in this matter.

**{¶54}** Based on our conclusion regarding Appellant's First Assignment of Error, the present arguments as to the motion for relief from judgment are moot. We therefore decline to address Appellant's Fourth Assignment of Error.

**{¶55}** The decision of the Licking County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings consistent with the law and this opinion.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

/s/ John W. Wise_____
HON. JOHN W. WISE


/s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


/s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

JWW/d 0904

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


EZEQUIEL CELAYA GARCIA, et al.    :
    :
    Plaintiffs-Appellants    :
    :
-vs-    :        JUDGMENT ENTRY
    :
NEWARK BUILDERS SUPPLY, INC.,    :
dba NBS SYSTEMS, et al.    :
    :
    Defendants-Appellees    :        Case No. 13 CA 27


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.

Costs assessed to Appellees.


/s/ John W. Wise_____
HON. JOHN W. WISE


/s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


/s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY